**Opinion issued March 24, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-19-00085-CR

———————————————

## MIGUEL AREVALO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 11**
**Harris County, Texas**
**Trial Court Case No. 2205480**

---

## MEMORANDUM OPINION

Appellant, Miguel Arevalo, appeals from his jury conviction for the misdemeanor assault of a family member. The trial court assessed his punishment at 30 days in the Harris County Jail with 220 days of credit toward incarceration, a fine, and costs. In two points of error, appellant argues that the trial court erred in

overruling (1) his objection to the omission of a self-defense instruction from the jury charge and (2) his two objections to the State's improper closing argument.

We affirm.

## Background

Harris County Sheriff's Deputy P. Landaverde testified that on the night of May 15, 2018, she was dispatched to a home in Harris County because of a family disturbance. Upon arriving at the home, she first saw appellant, who informed Deputy Landaverde that his wife had called the police and that she was inside the home. Once inside the home, Deputy Landaverde found the complainant, J. Morales, who appeared to be in distress. They walked into the bedroom and Deputy Landaverde noticed a closet door that had detached from its hinge. While speaking with the complainant, Deputy Landaverde noticed that she had "swelling and green, purplish pigmentation to her left eye."

After speaking with the complainant, Deputy Landaverde spoke with appellant, who appeared intoxicated because he spoke with slurred speech and smelled of alcohol. At this point in the testimony, the State played the complainant's 911 call, which Deputy Landaverde testified was consistent with what she saw when she arrived on scene.[1] Deputy Landaverde described appellant's version of the events as not being consistent with her observations that

---

[1] According to the translation of the 911 call, the complainant stated that appellant was attacking her and had been drinking.

2

night. Deputy Landaverde also testified that State's exhibit 16, a photograph of the complainant gesturing how appellant assaulted her, showed the manner and means by which she believed appellant assaulted the complainant.

On cross-examination, Deputy Landaverde testified that she only saw an injury to the complainant's eye. After appellant's attorney asked Deputy Landaverde what she did to investigate any possible self-defense claims, Deputy Landaverde answered, "When he advised that he was also scratched, I had [appellant] lift his shirt up. We illuminated him with a flashlight. I did not see any injuries at the time. And he advised that there [were] other injuries on his legs, that he was being vague as to what had occurred. So we lifted them up. He said that they were no longer there. So we did not continue to check higher on his legs." Deputy Landaverde testified that she did not take pictures of appellant because he did not have any injuries, but she agreed that it would have been better to have pictures to show to the jury. Deputy Landaverde later said that the parties were arguing over a cell phone. Deputy Landaverde was asked a second time about investigating self-defense to which she responded, "I spoke to the daughters. They didn't hear anything—they weren't there either. I did not question as far as being self-defense."

On re-direct, Deputy Landaverde stated that she did not see anything that night that indicated that the complainant was the initial aggressor. Deputy

Landaverde believed, based on all of the evidence that she gathered that night, that appellant assaulted the complainant by using a closed fist to the face. When asked why she looked at appellant's stomach, Deputy Landaverde answered, "During the interview he was claiming that she came onto him and he gestured this (Indicating). So I asked him to lift his shirt so that I could check if there were injuries. I needed to see because I didn't want there to be anything that I overlooked or I didn't see."

On re-cross examination, Deputy Landaverde agreed that it is "possible to not sustain any scratches if you are scratched over your clothes in a violent manner" and that it could cause pain. Deputy Landaverde also agreed that State's exhibit 18, a photograph of appellant, was of poor quality and did not show everything on appellant's stomach.

On further redirect, Deputy Landaverde agreed that the 911 call said that appellant was not wearing a shirt, but when she arrived, appellant was wearing a shirt. She agreed that any injuries he sustained would have occurred before she arrived on the scene, which would have been when he was not wearing a shirt. On further cross-examination, Deputy Landaverde agreed that she did not have any personal knowledge as to whether appellant was attacked while he was wearing a shirt or not.

4

The jury found appellant guilty of assault of a family member, and the trial court sentenced appellant to 30 days in jail with credit for time served. Appellant appeals from his conviction.

## Self-Defense Instruction

In his first point of error, appellant argues that the trial court erred by overruling his objection to the omission of a self-defense instruction in the jury charge. Appellant argues that the trial court mistakenly believed that in order to be entitled to the instruction, appellant had to show fear or apprehension. Appellant asserts that fear or apprehension is necessary if a person was acting "with deadly force on reasonable apprehension of or apparent danger that the other person would use deadly force against him." The State responds that the trial court properly denied the self-defense instruction because no evidence in the record showed appellant's state of mind when he struck his wife.

### A. Standard of Review and Applicable Law

When reviewing an alleged jury-charge error, appellate courts first determine whether error exists and then, if so, ascertain whether the resulting harm is sufficient to warrant a reversal. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270

5

S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If, as here, the defendant made a timely objection, reversal is required if there has been "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

A person is entitled to act in self-defense to an assault. *See* TEX. PENAL CODE § 9.31(a) ("[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.").

When determining whether a defensive instruction should have been provided, appellate courts "view the evidence in the light most favorable to the defendant's requested" instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue "is raised by the evidence, regardless of the strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013). "A trial court errs in denying a self-defense instruction if there is some evidence, from any source, when viewed in the light most favorable to the defendant, that will support the elements of self defense." *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

Chapter Nine of the Texas Penal Code (which contains the self-defense statute found in section 9.31) is entitled "Justification Excluding Criminal Responsibility." TEX. PENAL CODE §§ 9.01–.63. It includes justifications such as self-defense, necessity, and public duty, and explains the justification aspects of protection of persons and property. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). If the conduct in question is justified under one of the provisions of Chapter Nine, it is a defense to prosecution. TEX. PENAL CODE § 9.02; *see Young*, 991 S.W.2d at 838. However, a defendant is entitled to an instruction involving one of the justification defenses "only . . . when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Shaw*, 243 S.W.3d at 659. The Court of Criminal Appeals has since held that a defendant is not required to concede the State's version of events and admitting to the conduct does not necessarily mean admitting to every element if the defendant "sufficiently admits" to the commission of the offense. *See Gamino v. State*, 537 S.W.3d 507, 511–12 (Tex. Crim. App. 2017) (holding defendant charged with aggravated assault with deadly weapon entitled to self-defense instruction even though he denied pointing his gun at and verbally threatening complainant but admitted displaying weapon because he felt

7

threatened). Thus, the issue this Court must decide is whether appellant "sufficiently admitted" committing the offense.

A defendant is not required to testify in order to raise the issue of self-defense. *Vasquez v. State*, No. 01-17-00597-CR, 2018 WL 6216025, at *3 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, pet. ref'd, untimely filed). The issue "may be raised by the testimony of witnesses who testify to the defendant's acts and words at the time of the offense." *Reed v. State*, 703 S.W.2d 380, 384–85 (Tex. App.—Dallas 1986, pet. ref'd) (citing *Smith v. State*, 676 S.W.2d 584, 587 (Tex. Crim. App. 1984)); *see also VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.) ("Defensive issues may be raised by the testimony of any witnesses, even those called by the State."). The record must contain some evidence or "observable manifestations" of the defendant's state of mind at the time of the alleged act of self-defense. *See VanBrackle*, 179 S.W.3d at 713 (quoting *Reed*, 703 S.W.2d at 385). Examples of observable manifestations of a defendant's state of mind include evidence that the defendant called for help during an altercation or told the complainant, "I don't want to fight you . . . leave me alone," as they struggled. *VanBrackle*, 179 S.W.3d at 714; *Smith*, 676 S.W.2d at 586.

**B.     Analysis**

Here, appellant did not testify at trial. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (en banc) ("While a non-testifying defendant may be entitled to a charge on self-defense, it is rare for the defense to be raised when the defendant fails to testify."). The only witness testimony about the assault came from Deputy Landaverde, and she did not provide testimony on appellant's subjective belief at the time of the assault. Although some testimony was elicited that mentioned "self-defense," none of the testimony showed an observable manifestation of appellant's subjective belief at the time of the assault. Because no evidence showed appellant had a reasonable belief that his use of force was immediately necessary to protect himself, the trial court properly denied appellant's instruction on self-defense. *Reed*, 703 S.W.2d at 385 (concluding that appellant not entitled to self-defense instruction because no evidence of appellant's state of mind or observable manifestations of appellant's state of mind); *James v. State*, No. 02-06-00373-CR, 2007 WL 1649916, at *4 (Tex. App.—Fort Worth June 7, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding issue of self defense not raised when no direct evidence of state of mind nor evidence of observable manifestation of state of mind at time appellant used force on complainant); s*ee also Gonzales v. State*, No. 03–12–00620–CR, 2014 WL 6901181 (Tex. App.—Austin Dec. 4, 2014, pet. ref'd) (mem.

9

op., not designated for publication) (concluding that evidence tending to show that complainant injured defendant during altercation, without more, was insufficient to raise issue of self-defense); *Reynolds v. State*, No. 07–11–00500–CR, 2012 WL 6621317 (Tex. App.—Amarillo Dec. 19, 2012, no pet.) (mem. op., not designated for publication) (concluding that evidence tending to show that complainant kicked defendant prior to defendant striking complainant was insufficient to raise issue of self-defense because it did not establish that defendant had reasonable belief that his force was immediately necessary to protect himself from complainant's use of force against him; observing that "[s]elf-defense is not to be confused with retaliation"); *Shepherd v. State*, No. 14–08–00970–CR, 2011 WL 166893, at *7 (Tex. App.—Houston [14th Dist.] Jan. 11, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that "the mere existence of" injury to defendant caused by victim does not establish that defendant had reasonable belief that use of force was immediately necessary to protect himself from victim).

We overrule appellant's first point of error.

### Improper Argument

In his second point of error, appellant argues that the State used improper jury argument during its closing. Specifically, appellant argues that the State attempted to explain why the Texas Penal Code differentiates between assault and assault against a family member, which was done to "arouse the passion and

10

prejudice of the jury." The State responds that the complained-of argument is a proper plea for law enforcement.

## A. Standard of Review and Applicable Law

We review the trial court's ruling on an objection to closing argument for an abuse of discretion. *See Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010); *Cantu v. State*, 395 S.W.3d 202, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). To constitute an abuse of discretion, the trial court's ruling must fall outside the zone of reasonable disagreement. *See Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

Generally, to be permissible, jury argument must fall within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to opposing counsel's argument; or (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). The trial court does not abuse its discretion by sustaining an objection to an argument that is not supported by the evidence. *See Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim. App. 1980).

## B. Analysis

Appellant complains of the following jury argument:

[State]:     So I wanted to tell a little bit about why this charge is called assault family member and not just assault. Doesn't matter. Like what, the second part it's correct. It's specialized as an assault family member for a reason.

11

The punishment range is the same on both of these cases, assault, assault family member. But why is it labeled something different? When you—

[Appellant]: Objection, Judge. Improper argument. Not even a scope of testimony, not in evidence.

[Court]: Overruled.

[State]: This is a domestic violence case. And why does that make a difference? Why does that matter? The bond that you have with a family member is unlike a bond [that] you have with anybody else in the community, a stranger, colleague at work. A family is something important in this State, in this country, in the world. So when there's an attack between one family member and another family member, there's something there that can't be taken back. There is a trust for you not to hurt me that you violated. I put all my trust that you and I—

[Appellant]: Objection, your Honor. I'm going to object again. This is not evidence. This is not a summary of the evidence that was presented at trial.

[Court]: Your objection is noted but overruled.

[State]: Until death do us part. We're going to go to the end of the world together, and we're going to support each other no matter what. For one little thing could change that. One big thing can change that.

So you heard evidence over the last two days—you heard evidence yesterday actually. No evidence today. But, you know, this is very personal to people. No one wants to air out the skeletons in their closet.

But in this case somebody forced somebody to have to do that. Maybe they didn't have the courage to do it themselves. But the skeletons came out when [appellant]

12

> punched his wife in the face so hard that she flew through the door and broke the door—

[Appellant]: Objection, your honor. That was not in testimony. That's not testimony, your Honor.

[Court]: I'm going to sustain that.

An issue on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). During the State's closing argument, appellant objected twice: first, he objected "not even a scope of testimony, not in evidence" and second, he objected that "This is not evidence. This is not a summary of the evidence that was presented at trial." On appeal, appellant argues that that the "prosecutor had no basis in fact or in the record for his opinions as to why assault of a family member is a separate offense." Appellant then argues that a "prosecutor may not inject personal opinion in statements to the jury." Because his trial objection does not match his appellate complaint, appellant has failed to preserve this issue for appellate review. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); TEX. R. APP. 33.1(a)(1)(A).

Appellant next argues that the replaying of the 911 call during the State's closing argument

> was highly prejudicial and its probative value was outweighed by the bolstering effect replaying it would have on the jury. The jury had heard it the day before and would have it in the jury room—the only purpose in replaying it was so the

13

prosecutor could add his outside-the-record inflammatory comments and essentially put words in the mouth of the complainant, who had recanted.

Appellant complains of the following discussion that occurred during the State's closing arguments:

[State]:     So what happens if somebody doesn't get on the stand and say that story? What would happen in a case where an animal was abused and the animal couldn't get up on the stand to tell what happened? Does the abuser get to walk free because the person doesn't have a voice or the being doesn't have a voice? No.

So although you didn't get to hear from her on the stand, you did get to hear from her on the 9-1-1 call. I know it's a long time ago. You heard it yesterday morning. You guys have been back there for a little while. So if we could play the 9-1-1 call for you, refresh your memory a little bit. You're going to hear—I want you to listen specifically to the shaking in her voice, the fear in her voice specifically when she says that he hit her.

[Appellant]: Objection, your Honor. I'm objecting to this. The jury can take this to the back and listen to it themselves, your Honor.

[State]:     What's the objection, your Honor?

[Court]:     Yeah, what—

[Appellant]: 403, your Honor.

[Court]:     Overruled.

The State then played the video and continued its argument:

[State]:     So we get to hear her while the swelling is still throbbing, while the eye is still darkening and bruising, while the

14

> tears are still rolling down her face. And you hear her talk about hurry, he's attacking me. My daughters are here and they're crying. And they're listening and they're watching and they're seeing this.

At trial, appellant objected to replaying the 911 call based on Rule 403.[2] On appeal, appellant argues that replaying the 911 call was "highly prejudicial and its probative value was outweighed by the bolstering effect replaying it would have on the jury—the only purpose in replaying it was so the prosecutor could add his outside the record inflammatory comments and essentially put words in the mouth of the complainant, who had recanted." To the extent that appellant is arguing that the trial court abused its discretion in overruling his rule 403 objection, appellant does not cite any authority to support that argument, and therefore waives his rule 403 complaint. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (appellant waives issue on appeal if he does not adequately brief that issue by presenting supporting arguments and authorities); TEX. R. APP. P. 38.1(i). And, as appellant recognizes in his brief, trial counsel did not object to the State's further closing argument after the 911 call was played. Because appellant attempts to raise a new argument that was not asserted to the trial court, such argument is not preserved for appeal. *See* TEX. R. APP. P. 33.1.

---

[2]   Texas Rule of Evidence 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

15

We overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Goodman and Hightower.

Do not publish. *See* TEX. R. APP. P. 47.2(b).